IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

JIMMY L. BLACKWELL,               *

    Plaintiff,               *

vs.                         *
                             CASE NO.: 3:09-CV-42 (CDL)
OFFICER ROBERT C. MITCHELL,   *
*et al.*,
                        *

    Defendants.            *

                             *

O R D E R

This action arises from the arrest of Plaintiff Jimmy L. Blackwell ("Blackwell") by Defendant Officer Robert C. Mitchell ("Officer Mitchell"), a City of Hartwell, Georgia ("City") police officer. Blackwell alleges that during the course of the arrest, Officer Mitchell and Dustin Carruth ("Carruth"), a private citizen riding along with Officer Mitchell, attacked and beat him. Blackwell asserts federal law claims for unreasonable seizure and excessive force in violation of the Fourth Amendment against Officer Mitchell and Carruth pursuant to 42 U.S.C. § 1983 ("§ 1983").[1] Blackwell also asserts a § 1983 claim against the City, contending that its ride-along policy played a role in causing the deprivation of his constitutional rights. Finally, Blackwell asserts state law tort claims against Officer Mitchell

---

[1] Blackwell generally alleges that his Fourteenth Amendment rights were also violated, but he fails to state which particular Fourteenth Amendment right was violated or how it was violated.

and Carruth for assault, battery, intentional infliction of emotional distress, and false imprisonment.  Presently pending before the Court is Defendants' Motion for Partial Summary Judgment (ECF No. 38) as to Defendants Carruth and The City.[2]  As discussed below, the motion is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.  56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

---

[2] Blackwell voluntarily dismissed his claims against Defendants Welborn and Little and his failure to train claim against the City.  Pl.'s Br. in Opp'n to Defs. Carruth, Welborn, & Little's Mot. for Summ. J. 6, ECF No. 47-2; Pl.'s Resp. in Opp'n to Defs. Reno & City of Hartwell's Mot. for Summ. J. 5, ECF No. 47-3.  Therefore, summary judgment is appropriate as to those claims.
   Blackwell brought his claims against Hartwell Chief of Police Cecil Reno in his official capacity only.  2d Am. Compl. ¶ 9, ECF No. 31.  The Court construes Blackwell's official capacity claims against Chief Reno as claims against the City.  *See e.g. Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1309 (11th Cir. 2009).

BLACKWELL'S AFFIDAVIT

As a preliminary matter, the Court must determine whether it may rely on Blackwell's affidavit in determining whether any genuine fact disputes exist. *See* Pl.'s Aff., ECF No. 48-1. Defendants contend that the Court should not consider those portions of Blackwell's affidavit that conflict with his prior deposition testimony.

"[A] district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation." *Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 656 (11th Cir. 1984). This case involves an altercation between Blackwell and Officer Mitchell. Blackwell alleges that Carruth was also involved. When asked about the altercation in his deposition, Blackwell could not remember many details. Blackwell admits to drinking "a fair amount" earlier that evening, and that at the time of the incident he was "under the influence" of alcohol. Pl.'s Dep. 65:15-18, Sept. 9, 2010, ECF No. 45. Blackwell also testified that there were two police officers and that somebody attacked him, but he could not remember anything else. *Id.* at 72:13-78:21. Specifically, Blackwell could not recall who struck him, whether he struck anyone, or whether he made any verbal threats. *Id.* at 75:3-18, 76:20-77:23. In fact, Blackwell stated in his deposition that

the first thing he remembers after the officers first approached him and asked his name was waking up in the hospital.  *Id.* at 72:13-78:21.

In his affidavit, which Blackwell signed and swore to months after his deposition, Blackwell contends that he never attempted to strike any officers.  He asserts that two people held him on the ground, beat him, and kicked him after the initial blow to his head, and that he never made any verbal threats.  *See* Pl. Aff. ¶¶ 28-32.  But Blackwell offers no explanation for his sudden recollection of the specifics of the altercation.

Nevertheless, eight months prior to his deposition, Blackwell testified in a Hart County Superior Court hearing that he "didn't hit nobody."  *See* Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. Attach. 6, Mot. for Change of Venue & Mot. to Suppress Hr'g Tr. 43, 48 Jan. 12, 2010, ECF No. 47-6 [hereinafter Sup. Ct. Hr'g Tr.].  But Blackwell admitted that he could not recall what, if anything, he said to the officers. *Id.* at 36 ("I don't know what I said.").  So Blackwell's hearing testimony affirms in part and conflicts in part with the assertions made in his affidavit.

To the extent that Blackwell's affidavit is in conflict with both his prior hearing and deposition testimony, the Court will not consider it.  But where Blackwell's affidavit only

conflicts with his deposition testimony and is supported by his prior hearing testimony, the Court will consider it.

### FACTUAL BACKGROUND

Viewed in the light most favorable to Blackwell, the record reveals the following:

In the early hours of February 16, 2009, Blackwell was walking along Gordon Street in Hartwell, Georgia, toward his brother-in-law's house at 129 Savannah Street. Defendants contend that Blackwell was walking in the middle of the street. Mitchell Dep. 25:19-27:15, Sept. 13, 2010, ECF No. 56; *see also* Carruth Dep. 15:11-16, Sept. 13, 2010, ECF No. 58. But Blackwell maintains that he was simply crossing the street. Pl.'s Dep. 71:4-72:7.

Officer Mitchell was on patrol in the vicinity. He was accompanied in his patrol car by Carruth, a participant in the Hartwell Police Department's ride-along program.[3] Carruth spotted Blackwell and brought him to Officer Mitchell's attention. Mitchell Dep. 25:19-22. Officer Mitchell pulled his patrol car close to Blackwell—who by then was walking along Savannah Street—and asked him to stop. When Blackwell refused, Officer Mitchell got out of his patrol car, approached him, and asked him for his name and identification. Blackwell gave

---

[3] At the time, the police department authorized private citizens to ride along with officers on patrol to gain insight into the nature of police work. Reno Dep. 12:17-13:21, Sept. 13, 2010, ECF No. 64.

Officer Mitchell his name, but he did not have any identification. Pl.'s Dep. 74:7-10. Following this exchange, Blackwell started walking away from Officer Mitchell, but Officer Mitchell stepped in front of him and grabbed Blackwell by his left arm. Mitchell Dep. 31:5-36:17.

It is undisputed that an altercation ensued between Blackwell and Officer Mitchell and that Officer Mitchell hit Blackwell in the head with his metal baton. Defs.' Joint Mot. for Summ. J. Ex. A, Mitchell Supplemental Rep., ECF No. 38-1 [hereinafter Mitchell Suppl. Rep.]. Officer Mitchell also called for police back-up. *Id.* Blackwell asserts that he did not attempt to strike any officers. *See* Pl.'s Aff. ¶ 31; *accord* Sup. Ct. Hr'g Tr. 43, 48.

During the altercation, Blackwell began moving toward his brother-in-law's house nearby. Mitchell Suppl. Rep. Although Blackwell stated both in his deposition and in his affidavit that after the initial blow to his head he remained on the ground, he also admitted that he somehow reached his brother-in-law's driveway. Sup. Ct. Hr'g Tr. 46 ("I don't know how I got over in his driveway."). As he moved toward the house, Blackwell said that he was going to get a gun and kill Officer Mitchell and Carruth. Mitchell Suppl. Report. At that time, Officer Mitchell asked Carruth to help him stop Blackwell from reaching the house. *Id.*; Mitchell Dep. 68:2-9. In response,

6

Carruth took Blackwell to the ground before he reached the
house.  Carruth Dep. Ex. 18, Carruth Supplemental Report,
Feb. 17, 2009; Mitchell Suppl. Rep.  Officer Mitchell's back-up—
Corporal Kenneth Little—then arrived and helped Officer Mitchell
handcuff Blackwell.  Little Dep. 8:1-9:7, 13:1-12,
Sept. 13, 2010, ECF No. 57.  Once Corporal Little arrived,
Carruth stepped back and offered no further help to Officer
Mitchell or any other officer.  Carruth Dep. 25:22-23.  An
ambulance transported Blackwell to Hart County Hospital for
treatment.

It is undisputed that, as a result of the altercation,
Blackwell lost his left eye, has difficulty seeing with his
right eye, and suffered a broken jaw and broken nose.  It is
also undisputed that, as a result of the incident, Officer
Mitchell sustained a concussion that forced him to miss work for
more than a month.

DISCUSSION

**I.   Blackwell's Federal Claims Against Carruth**

To prevail on his § 1983 claim against Carruth, Blackwell
must show that Carruth was acting under color of law and that
Carruth deprived him of a right, privilege, or immunity secured
by the Constitution or a federal law.  *See* 42 U.S.C. § 1983.
Blackwell asserts that Carruth violated his Fourth Amendment
right to be free from unreasonable seizure and the use of

excessive force.[4]   2d Am. Compl. ¶¶ 1, 21, ECF No. 31.   Blackwell
must also show that Carruth "may fairly be said to be a state
actor."   *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).
Assuming for purposes of the present motion that Carruth was
acting as a state actor, the Court finds that he did not deprive
Blackwell of any constitutionally-protected right.   Therefore,
Carruth is not liable under § 1983.

A.   Unreasonable Seizure

The Court rejects Blackwell's claim that Carruth
unreasonably seized him because the undisputed evidence shows
that Officer Mitchell, not Carruth, made the decision to detain
Blackwell.   The undisputed evidence further shows that Carruth
did not become involved in Blackwell's seizure until after
Blackwell threatened to get a gun, when Officer Mitchell
directed Carruth to assist in stopping Blackwell.   Under these
circumstances, no reasonable jury could conclude that Carruth
unreasonably seized Blackwell in violation of his Fourth
Amendment rights.   Accordingly, Carruth is entitled to summary
judgment on this claim.

---

[4] Blackwell also alleges that Carruth violated his Fourteenth Amendment
rights.   But he points to no evidence to support his claim.   *See
generally* 2d Am. Compl.   To the extent Blackwell intends to rely on
the Fourteenth Amendment's substantive due process protections, his
claims fail because unreasonable seizure and excessive force claims
are analyzed under the Fourth Amendment.   *E.g. Carr v. Tatangelo*, 338
F.3d 1259, 1267 n.15 (11th Cir. 2003) (citing *Graham v. Connor*, 490
U.S. 386, 395 (1989)).   For these reasons, the Court focuses on
Blackwell's Fourth Amendment claims.

B.    Excessive Force

The Court also rejects Blackwell's claim that Carruth used excessive force in violation of his Fourth Amendment rights when Carruth tackled him.   "[C]laims of excessive force are to be judged under the Fourth Amendment's objective reasonableness standard."   *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (internal quotation marks omitted).   The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."   *Id.* (internal quotation marks omitted).   The use of force must be judged on a case-by-case basis "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."   *Id.* (internal quotation marks omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment."   *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks and citations omitted).   "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."   *Id.* at 396-97 (internal quotation marks omitted).

In determining whether the use of force was objectively reasonable, the Court pays "careful attention to the facts and

circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Crenshaw*, 556 F.3d at 1290 (internal quotation marks omitted). "In addition, other considerations include: (1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Id.* (internal quotation marks omitted).

Blackwell has not pointed to any evidence creating a genuine fact dispute in his favor regarding the objective reasonableness of Carruth's use of force. First, Blackwell has not demonstrated that there was no need for the application of force, and the present record supports the use of some force. Both Carruth and Officer Mitchell stated that Blackwell was threatening to get a gun from a nearby house and shoot them. *See* Mitchell Dep. 67:25-68:9; Carruth Dep. 30:3-4. Further, the amount of force Carruth used was reasonable since the record shows that Carruth took Blackwell to the ground and nothing more. Moreover, Blackwell has produced no evidence that Carruth caused any of his injuries. And there is no evidence that Carruth's actions were malicious or sadistic; rather, the

10

evidence suggests that Carruth took Blackwell to the ground as Officer Mitchell directed in a good faith attempt to prevent Blackwell—who was in flight from Officer Mitchell—from retrieving a firearm from his brother-in-law's house.[5] Therefore, the Court finds that no reasonable jury could conclude that Carruth used excessive force against Blackwell. Accordingly, Carruth is entitled to summary judgment on Blackwell's excessive force claim.

## II.  Blackwell's State Law Claims Against Carruth

Defendants also seek summary judgment as to Blackwell's state law claims against Carruth.  Blackwell did not respond with any argument or evidence in support of his state law claims.  *See generally* Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., ECF No. 47-2.  "[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995).  Therefore, the Court grants Defendants' motion for summary judgment as to Blackwell's state law claims against Carruth.

---

[5] Blackwell insists that his brother-in-law does not own any guns and that his threat, which he does not recall making, was at best an empty one.  *See* Pl.'s Dep. 76:20-77:23.  Even if that is true, there is no evidence that Officer Mitchell and Carruth knew it was an empty threat.

### III. Blackwell's § 1983 Claim Against the City

To prevail on his § 1983 claim against the City, Blackwell must show that there is a direct causal link between a City policy or custom and the alleged constitutional violations. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Since the Court has found that Carruth committed no constitutional violations, Blackwell's claim against the City must rest on Officer Mitchell's alleged violations. Therefore, Blackwell must produce some evidence from which a reasonable jury could conclude that a City policy or custom caused Officer Mitchell to deprive Blackwell of his Fourth Amendment rights to be free from unreasonable seizure and excessive force.

The only policy or custom relied on by Blackwell in opposition to summary judgment is the City's ride-along policy. *See* 2d Am. Compl. ¶¶ 66-75; *see also generally*, Pl.'s Br. in Opp'n to Defs. Reno & City of Hartwell's Mot. for Summ. J., ECF No. 47-3. It is undisputed that the City's custom was that civilian ride-alongs were not to aid in any law enforcement activity unless an officer expressly requested their assistance. *See* Carruth Dep. 8:21-23 ("[T]he officer I was riding along with would pretty much tell me just sit in the car unless they needed my help"). While Blackwell alleges that this custom was the "direct and proximate cause" of his injuries, 2d Am. Compl. ¶ 73-74, he fails to explain the connection between the custom and

the alleged constitutional violations.  And the Court can find no evidence in the record from which a reasonable jury could conclude that the ride-along policy contributed to Officer Mitchell's detention of Blackwell or Officer Mitchell's use of force against him.  Accordingly, the City is entitled to summary judgment on Blackwell's § 1983 claim against it.

CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 38) is granted.  Given the Court's grant of summary judgment and Blackwell's dismissal of other previously asserted claims, the only claims remaining for trial are against Officer Mitchell in his individual capacity.


IT IS SO ORDERED, this 19th day of August, 2011.

S/Clay D. Land
_____
CLAY D. LAND
UNITED STATES DISTRICT JUDGE